STROUD, Judge.
 

 *113
 
 Defendant, a registered sex offender, went to the Banner Elk Presbyterian Church to meet with the pastor, but because the church has a preschool on its premises, he was charged with violation of North Carolina General Statute § 14-208.18(a) for being a "[s]ex offender unlawfully on premises[.]" Defendant moved to dismiss the charges for several reasons, including as-applied and facial challenges to the constitutionality of North Carolina General Statute § 14-208.18. The trial court denied defendant's motion, he was convicted, and he appeals. Because defendant has not demonstrated error regarding his trial, lacks standing to bring a facial constitutional challenge, and the statute is not unconstitutionally vague as applied to him, we find no error.
 

 *114
 
 I. Background
 

 The State's evidence tended to show that on 12 March 2010, defendant registered as a sex offender with the Avery County Sheriff's Office. Upon registration defendant received an "offender acknowledgment packet" which contained information regarding the rules and responsibilities of the registered sex offender. Included in the packet was a document that stated that sex offenders "are prohibited from being within 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on the premises that are not intended primarily for the use, care, or supervision of minors[.]"
 

 On the morning of Tuesday, 13 November 2012, defendant went to the Banner Elk Presbyterian Church to meet with the pastor in the church's office to ask that the church participate in the "Angel Tree program to provide presents to children of inmates." The church's office hours were from 8:30am to 2:30pm, Monday through Thursday. The
 
 *155
 
 church operated a preschool from 9:00am to 1:00pm, Monday through Thursday, for children from ages two to five. The preschool children used rooms throughout the church building and also played outside. The church advertised the preschool with flyers throughout the community, on its website, and with signs around the church. The entrance to the church office was also the entrance to the nursery and the door through which defendant entered had a sign on it reading "nursery[.]"
 

 Thereafter, the police contacted defendant, and he acknowledged that he was a registered sex offender, that he had visited the church office, and that "he knew he wasn't supposed to hang around ... preschools." In 2013, defendant was indicted for being a sex offender unlawfully on premises pursuant to North Carolina General Statute § 14-208.18(a)(2). On 9 June 2014, defendant filed a motion to dismiss arguing "that the statute is unconstitutional as applied to ... [him], and further that the statute itself is unconstitutional[,]" and his jury trial began.
 
 [1]
 
 Before his trial began, defendant made various oral arguments to the trial court addressing his contentions that the charges against him should be dismissed. The trial court denied defendant's oral motions but stated it would withhold its ruling on defendant's pretrial written motion to dismiss challenging the constitutionality of the statute. The jury found defendant guilty, and the trial court entered judgment in
 
 *115
 
 accordance with the verdict. Thereafter, the trial court entered a written order denying defendant's motion to dismiss on constitutional grounds, on both facial and as-applied challenges. Defendant appealed.
 

 II. Motion to Dismiss
 

 Defendant raises two separate arguments as to why his motions to dismiss should have been allowed.
 

 This Court reviews the trial court's denial of a motion to dismiss de novo. Upon defendant's motion to dismiss, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor.
 

 State v. Larkin,
 
 --- N.C.App. ----, ----,
 
 764 S.E.2d 681
 
 , 689-90 (2014) (citations and quotation marks omitted),
 
 disc. review denied,
 
 - -- N.C. ----,
 
 768 S.E.2d 841
 
 (2015).
 

 A. Age of Victim in Prior Offense
 

 Defendant first contends that "the trial court reversibly erred in ruling that whether Fryou was subject to prosecution under N.C. Gen.Stat. § 14-208(a)(2) based on having previously been convicted of an offense involving a victim less than 16 years of age was a question of fact for the jury." (Original in all caps.) The State indicted defendant pursuant to North Carolina General Statute § 14-208.18(a)(2) which provides:
 

 It shall be unlawful for any person required to register under this Article, if the offense requiring registration is described in subsection (c) of this section, to knowingly be at any of the following locations:
 

 (1) On the premises of any place intended primarily for the use, care, or supervision of minors, including, but not limited to, schools, children's museums, child care centers, nurseries, and playgrounds.
 

 *116
 
 (2) Within 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors, including,
 
 *156
 
 but not limited to, places described in subdivision (1) of this subsection that are located in malls, shopping centers, or other property open to the general public.
 

 N.C. Gen.Stat. § 14-208.18(a)(1)-(2) (2011). Subsection (c) of North Carolina General Statute § 14-208.18 as referenced in subsection (a) provides:
 

 Subsection (a) of this section is applicable only to persons required to register under this Article who have committed any of the following offenses:
 

 (1) Any offense in Article 7A of this Chapter.
 

 (2) Any offense where the victim of the offense was under the age of 16 years at the time of the offense.
 

 N.C. Gen.Stat. § 14-208.18(c)(1)-(2) (2011).
 

 The indictment stated that defendant had "been previously convicted of an offense where the victim of the offense was under the age of 16 years at the time of the offense." Before the trial court defendant argued that his prior federal conviction did not show that the victim was under 16 years old; essentially defendant was requesting dismissal to the alleged failure in the indictment. Thereafter, the trial court and both attorneys discussed whether determining the age of the victim in the prior conviction was a question of fact for the jury or a question of law for the trial judge. Ultimately, defendant stipulated that he was "required to register as a sex offender, and that the victim was under the age of 16." But a defendant may generally not stipulate to a question of law.
 
 State v. Hanton,
 

 175 N.C.App. 250
 
 , 253,
 
 623 S.E.2d 600
 
 , 603 (2006) ("Stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate. This rule is more important in criminal cases, where the interests of the public are involved." (citation, quotation marks, and ellipses omitted)). Thus, defendant's argument on appeal is that the issue of the victim's age was a legal question and not a fact which could be established by stipulation or by the jury's determination.
 

 The State contends that defendant did not preserve this issue for appeal both because he switched his stance on whether the question of
 
 *117
 
 the victim's age was a factual or legal question and because of his stipulation. We disagree. Our review of the transcripts indicates that both parties debated how to characterize the issue of the victim's age throughout the proceedings. Defendant does not on appeal take a stand completely different than he did at trial. And although defendant did ultimately stipulate to the victim's age, he did so specifically under objection, only because the trial court had rejected his prior arguments. Defendant's strategic decision to stipulate, under objection, based on an unfavorable decision by the trial court, does not mean defendant did not preserve the issue for appellate review; it simply means defendant played the hand he was dealt after his argument to the trial court was unsuccessful.
 

 As defendant was charged, North Carolina General Statute § 14-208.18(a)(2) required the State to show,
 
 inter alia,
 
 that defendant was (1) a person required to register under North Carolina General Statute Article 27A, Sex Offender Registration Programs; (2) where the offense that required registration involved a victim that was under 16 years old at the time of the offense; and (3) knowingly at one of the proscribed locations.
 
 See
 
 N.C. Gen.Stat. § 14-208.18. Defendant contends that our construction of North Carolina General Statute § 14-208.18(a)(2) should be guided by
 
 State v. Phillips,
 

 203 N.C.App. 326
 
 ,
 
 691 S.E.2d 104
 
 ,
 
 disc. review denied,
 

 364 N.C. 439
 
 ,
 
 702 S.E.2d 794
 
 (2010). In
 
 Phillips,
 
 this Court analyzed statutes regarding satellite-based monitoring ("SBM") to "determine whether the trial court could properly conclude that defendant's conviction of the offense of felonious child abuse by the commission of any sexual act under N.C.G.S. § 14-318.4(a2) is an aggravated offense as defined in N.C.G.S. § 14-208.6(1a)."
 
 Id.
 
 at 329,
 
 691 S.E.2d at 107
 
 (quotation marks omitted). This Court determined:
 

 N.C.G.S. § 14-318.4(a2) provides: Any parent or legal guardian of a child less than 16 years of age who commits or allows the commission of any sexual act upon the child is guilty of a Class E felony. Consequently, the essential elements of
 
 *157
 
 felonious child abuse under subsection (a2) are (1) the defendant is a parent or legal guardian of (2) a child less than 16 years of age, (3) who commits or allows the commission of any sexual act upon that child. In comparison, the statutory definition of aggravated offense requires that the offender (1) engage in a sexual act involving vaginal, anal, or oral penetration (2) with a victim of any age through the use of force or the threat of serious violence or with a victim who is less than 12 years old.
 
 *118
 
 Thus, as defendant asserts in his brief and as the State concedes, an offender's conviction of felonious child abuse under N.C.G.S. § 14-318.4(a2) may or may not be a conviction which results from the commission of a sexual act involving penetration, which is required for an offense to be considered an aggravated offense under N.C.G.S. § 14-208.6(1a). In other words, without a review of the underlying factual scenario giving rise to the conviction, which is prohibited under
 
 Davison,
 
 a trial court could not know whether an offender was convicted under N.C.G.S. § 14-318.4(a2) because he committed a sexual act involving penetration. In addition, while an aggravated offense is an offense in which the offender has engaged in a specific type of sexual act, an offender may be convicted of felonious child abuse by the commission of any sexual act as a result of either committing any sexual act upon a child less than 16 years of age, or as a result of allowing the commission of any sexual act upon such a child. Thus, by examining the elements of the offense alone, a trial court could not determine whether a person convicted of felonious child abuse by the commission of any sexual act necessarily engaged in a specific type of sexual act himself. Further, if an offense does not involve engaging in a sexual act through the use of force or threat of serious violence, the offense can only be found to be an aggravated offense if it involves engaging in sexual acts involving penetration with a victim who is less than 12 years old. However, felonious child abuse by the commission of any sexual act provides that the victim must be a child less than 16 years of age.
 
 Since a child less than 16 years is not necessarily also less than 12 years old, without looking at the underlying facts, a trial court could not conclude that a person convicted of felonious child abuse by the commission of any sexual act committed that offense against a child less than 12 years old. Therefore, in light of our review of the plain language of the statutes at issue, we must conclude that the trial court erred when it determined that defendant's conviction offense of felonious child abuse by the commission of any sexual act under N.C.G.S. § 14-318.4(a2) is an aggravated offense as defined under N.C.G.S. § 14-208.6(1a) because, when considering the elements of the offense only and not the
 

 *119
 

 underlying factual scenario giving rise to this defendant's conviction, the elements of felonious child abuse by the commission of any sexual act do not fit within the statutory definition of aggravated offense.
 
 Because we must conclude that defendant was not convicted of an aggravated offense in light of the rule in
 
 Davison
 
 , we must remand this matter to the trial court with instructions that it reverse its determination that defendant is required to enroll in a lifetime SBM program.
 

 Id.
 
 at 330-31,
 
 691 S.E.2d at 107-08
 
 (emphasis added) (citations, quotation marks, ellipses, and brackets omitted). Thus, based upon
 
 Phillips,
 
 defendant contends that we may only consider the elements of the particular crime, and not the underlying facts, of his federal conviction for receiving child pornography and because the elements do not require that the victim be under 16, but rather under 18, the State has failed to demonstrate that defendant violated North Carolina General Statute § 14-208.18(a)(2) in that the victim was under 16 years old.
 

 In contrast, in
 
 State v. Arrington,
 

 226 N.C.App. 311
 
 ,
 
 741 S.E.2d 453
 
 (2013), this Court distinguished the
 
 Phillips,
 
 elements-based approach in a case regarding child abduction:
 

 A defendant commits the offense of abduction of children when he without legal justification or defense, abducts or induces any minor child who is at least four years younger than the person to leave any person,
 
 *158
 
 agency, or institution lawfully entitled to the child's custody, placement, or care. Thus, the statutory definition of offense against a minor for purposes of SBM requires proof of a fact in addition to the bare fact of conviction-that the defendant is not the minor's parent.
 

 In the context of deciding whether a conviction was an aggravated offense for SBM purposes, we have held that the trial court is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction.
 
 Davison
 
 and the cases following it specifically addressed whether a particular conviction could constitute an aggravated offense. They did not address what the trial court may consider in determining whether a conviction qualifies as a reportable offense against a minor.
 

 *120
 
 The plain language in the definition of aggravated offense requires that courts consider the elements of the conviction as it covers
 

 any criminal offense that includes either of the following: (i) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the use of force or the threat of serious violence; or (ii) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim who is less than 12 years old.
 

 The definition of offenses against a minor, by contrast, lists certain, particular offenses, and then adds the requirements that the victim be a minor and that the defendant not be a parent of the victim.
 

 Further, in concluding that trial courts are restricted to considering the elements of the offense in determining whether a given conviction was an aggravated offense we noted a concern that defendants would be forced to re-litigate the underlying facts of their case even if they pleaded guilty to a lesser offense. This concern is absent in the context of defining offenses against a minor. Trial courts in this context do not need to inquire into whether defendant's conduct could have constituted a greater offense, despite a plea to the lesser. They only need decide whether the victim was a minor and whether defendant was a parent of the minor child, facts that will normally be readily ascertainable.
 

 Because the statute explicitly requires that the State show that defendant was not the parent of the minor victim in addition to the fact that defendant was convicted of one of the listed offenses, the statute effectively mandates that the trial court must look beyond the offense of conviction. Therefore, we hold that in deciding whether a conviction counts as a reportable conviction under the offense against a minor provision, the trial court is not restricted to simply considering the elements of the offense for which the defendant was convicted to the extent that the trial court may make a determination as to whether or not the defendant was a parent of the abducted child.
 

 *121
 

 Id.
 
 at 313-14,
 
 741 S.E.2d at 455-56
 
 (emphasis added) (citations and quotation marks omitted). Thus, in
 
 Arrington,
 
 this Court clarified that the trial court could look beyond the bare elements and consider the underlying facts because not only did the statute at issue require defendant have the prior conviction, but it also required a further factual determination, separate and apart from that prior conviction.
 
 See
 
 id.
 

 We conclude that the case before us is more similar to
 
 Arrington. See
 
 id.
 

 In addition, to the extent that there may be any conflict between
 
 Phillips
 
 and
 
 Arrington,
 
 there is a more fundamental reason that we are guided by
 
 Arrington. Phillips
 
 involved SBM which is "a civil regulatory scheme [,]" and thus of limited use in determining a criminal matter.
 
 State v. Wagoner,
 

 199 N.C.App. 321
 
 , 332,
 
 683 S.E.2d 391
 
 , 400 (2009) ("SBM is a civil regulatory scheme[.]"),
 
 aff'd per curiam,
 

 364 N.C. 422
 
 ,
 
 700 S.E.2d 222
 
 (2010) ;
 
 see
 

 Phillips,
 

 203 N.C.App. 326
 
 ,
 
 691 S.E.2d 104
 
 . One of the primary reasons that the trial court must rely only on the crime for which the defendant was convicted in considering imposition of SBM is that the court is often conducting a separate hearing regarding this civil regulatory matter, perhaps years after the initial criminal conviction. Allowing evidence beyond
 
 *159
 
 the elements of the crime for which the defendant was actually convicted would force him "to re-litigate the underlying facts of [his] case even if [he] pleaded guilty to a lesser offense."
 
 Arrington,
 

 226 N.C.App. at 314
 
 ,
 
 741 S.E.2d at 455-56
 
 . While SBM cases may provide some guidance for interpreting statutes addressing sexual offenses,
 
 this
 
 case is a criminal prosecution of a crime defined by a particular statute and does not concern the imposition of a civil regulatory remedy.
 
 See generally
 

 Wagoner,
 

 199 N.C.App. at 332
 
 ,
 
 683 S.E.2d at 400
 
 .
 

 Just as in
 
 Arrington,
 
 here the statute at issue defines a criminal offense and the definition requires not only a separate prior offense but an additional fact coupled with that prior offense.
 
 Compare
 

 Arrington
 
 at 315,
 
 741 S.E.2d at 456
 
 . In
 
 Arrington,
 
 "the statute explicitly require[d] that the State show that defendant was not the parent of the minor victim
 
 in addition
 
 to the fact that defendant was convicted of one of the listed offenses" and from that this Court concluded that "the statute effectively mandates that the trial court must look beyond the offense of conviction."
 

 Id.
 

 (emphasis added). Similarly, here, the statute requires the State to show that defendant had been convicted of an offense requiring registration and that the victim of that offense was under 16 years old.
 
 See
 
 N.C. Gen.Stat. § 14-208.18(a).
 

 Using a plain language analysis,
 
 see
 

 State v. Largent,
 

 197 N.C.App. 614
 
 , 618,
 
 677 S.E.2d 514
 
 , 517 (2009) ("Where the language of a statute is clear and unambiguous there is no room for judicial construction and
 
 *122
 
 the courts must give it its plain and definite meaning, and the courts are without power to interpolate, or superimpose, provisions and limitations not contained therein.") (citation and quotation marks omitted), North Carolina General Statute § 14-208.18(a)(2) does
 
 not
 
 require that the offense for which defendant registered have an element requiring the victim to be under 16 years old, but only that the victim actually be under 16 years old.
 
 See
 
 id.
 

 In other words, there was no dispute here that defendant had been convicted of a registrable offense, but since that offense did not include as an element a requirement that the victim was under the age of 16, the State must also prove that the victim of that crime was
 
 actually
 
 younger than 16 at the time of the offense.
 
 [2]
 

 See
 
 id.
 

 Accordingly, the age of the victim was a factual question, and defendant could properly stipulate to it. The trial court did not err in denying defendant's request for dismissal regarding this element, so this argument is overruled.
 

 B. Knowing Element
 

 Defendant also contends that "the trial court reversibly erred in denying Fryou's motion to dismiss at the close of evidence because the State failed to produce substantial evidence that Fryou had knowledge of the existence of a preschool on the premises of the Banner Elk Presbyterian Church." (Original in all caps.) The State argues again that defendant has not preserved this issue for appeal, but we have reviewed the transcript, and we find defendant's attorney's argument during the motion to dismiss regarding defendant's "intent to go near a place where he knows he can't go" to be sufficient for review of the knowing element.
 

 Again, when considering the evidence the trial court was to "consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 Larkin,
 
 ---N.C.App. at ----,
 
 764 S.E.2d at 690
 
 . The State's evidence tended to show that the church advertised the preschool with flyers throughout the community, on its website, and with signs around the church. The entrance to the church office, where defendant met with the pastor, was also the entrance to the nursery and had a sign explicitly stating the word "nursery[;]" thus, even if defendant had not seen the advertisements of the preschool, he walked through the door which had a sign indicating the presence of the nursery and the jury could infer from this
 
 *123
 
 that he was
 
 *160
 
 thus informed of the nursery, but instead of leaving, entered the church anyway.
 

 Even so, defendant contends that the evidence just noted does not demonstrate that he should have known children were actually on the premises at the same time that he was. Yet the actual presence of children on the premises is not an element of the crime, and the State needed only to demonstrate that defendant was "knowingly" "[w]ithin 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors" whether the minors were or were not actually present at the time.
 
 See
 
 N.C. Gen.Stat. § 14-208.18(a)(2). We conclude there was "substantial evidence" that defendant knew a child care facility was being operated on the premises.
 
 Larkin,
 
 --- N.C.App. at ----,
 
 764 S.E.2d at 689
 
 . This argument is overruled.
 

 II. Overbreadth
 

 Defendant contends that "Section 14-208.18(A)(2) of the North Carolina General Statutes is unconstitutionally overbroad
 
 on its face
 
 because it fails to require proof of criminal intent and therefore criminalizes a substantial amount of constitutionally protected conduct." (Emphasis added). (Original in all caps).
 

 In challenging the constitutionality of a statute, the burden of proof is on the challenger, and the statute must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt or it cannot be upheld on any reasonable ground. When examining the constitutional propriety of legislation, we presume that the statutes are constitutional, and resolve all doubts in favor of their constitutionality.
 

 A law is impermissibly overbroad if it deters a substantial amount of constitutionally protected conduct while purporting to criminalize unprotected activities. Legislative enactments that encompass a substantial amount of constitutionally protected activity will be invalidated even if the statute has a legitimate application.
 

 State v. Mello,
 

 200 N.C.App. 561
 
 , 564,
 
 684 S.E.2d 477
 
 , 479-80 (2009) (citations, quotation marks, brackets, and heading omitted),
 
 aff'd per curiam,
 

 364 N.C. 421
 
 ,
 
 700 S.E.2d 224
 
 (2010).
 

 Defendant plainly presents his argument as a facial rather than an as-applied challenge arguing that "[w]hen raising an overbreadth
 
 *124
 
 challenge, the challenger has the right to argue the unconstitutionality of the law as to the rights of others, not just as the ordinance is applied to him.
 
 Broadrick v. Oklahoma,
 

 413 U.S. 601
 
 , 612,
 
 93 S.Ct. 2908
 
 ,
 
 37 L.Ed.2d 830
 
 , 840 (1973)."
 

 Broadrick
 
 states that
 

 the Court has altered its traditional rules of standing to permit-in the First Amendment area-attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.
 

 Broadrick v. Oklahoma,
 

 413 U.S. 601
 
 , 612,
 
 93 S.Ct. 2908
 
 , 2916,
 
 37 L.Ed.2d 830
 
 , 840 (1973) (citation and quotation marks omitted);
 
 see
 

 County Court of Ulster v. Allen,
 

 442 U.S. 140
 
 , 155,
 
 99 S.Ct. 2213
 
 , 2223,
 
 60 L.Ed.2d 777
 
 , 790 (1979) ("[I]f there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. A limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment.") ((citation omitted)). But defendant's contentions regarding North Carolina General Statute § 14-208.18(a) do not relate to speech or expression under the First Amendment in any way. Defendant did not argue either before the trial court or on appeal in his original brief that he was going to the church to worship or assert any other right protected by the First Amendment; in fact, defendant's brief does not identify a specific constitutional
 
 *161
 
 amendment or provision, state or federal, upon which his argument as to unconstitutional overbreadth could be based. Since defendant's argument is not based upon First Amendment rights,
 
 Broadrick
 
 cannot confer standing on defendant.
 
 See
 

 Broadrick,
 

 413 U.S. at 612
 
 ,
 
 93 S.Ct. at 2916
 
 ,
 
 37 L.Ed.2d at 840
 
 . And since defendant does not make an overbreadth argument as to any other identifiable constitutional right, even if it may be theoretically possible to do so, his argument fails.
 

 III. Vagueness
 

 Defendant's remaining constitutional argument is that the statute is unconstitutionally vague as applied to him. He argues that
 

 *125
 
 Section 14-208.18(a)(2) of the North Carolina General Statutes is unconstitutionally vague as applied to Fryou because the statute contemplates two distinct physical locations, one on the premises of the other and both operational at the same times, and in Fryou's case there was only one distinct physical location, a church, that occasionally operated a preschool on its premises.
 

 (Original in all caps.)
 

 The standard of review for questions concerning constitutional rights is
 
 de novo.
 
 Furthermore, when considering the constitutionality of a statute or act there is a presumption in favor of constitutionality, and all doubts must be resolved in favor of the act. In passing upon the constitutionality of a statute there is a presumption that it is constitutional, and it must be so held by the courts, unless it is in conflict with some constitutional provision.
 

 State v. Daniels,
 

 224 N.C.App. 608
 
 , 621,
 
 741 S.E.2d 354
 
 , 363 (2012) (citations, quotation marks, and brackets omitted),
 
 disc. review denied and appeal dismissed,
 

 366 N.C. 565
 
 ,
 
 738 S.E.2d 389
 
 (2013).
 

 [A] statute is unconstitutionally vague if it either: (1) fails to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited; or (2) fails to provide explicit standards for those who apply the law. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.
 

 Id.
 
 at 622, 741 S.E.2d at 364 (citations and quotation marks omitted).
 

 Again, North Carolina General Statute § 14-208.18(a) provides in pertinent part:
 

 It shall be unlawful for any person required to register under this Article, if the offense requiring registration is described in subsection (c) of this section, to knowingly be at any of the following locations:
 

 (1) On the premises of any place intended primarily for the use, care, or supervision of minors, including, but not limited to, schools, children's museums, child care centers, nurseries, and playgrounds.
 

 *126
 
 (2) Within 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors, including, but not limited to, places described in subdivision (1) of this subsection that are located in malls, shopping centers, or other property open to the general public.
 

 N.C. Gen.Stat. § 14-208.18(a).
 

 Defendant first essentially contends that North Carolina General Statute § 14-208.18(a)(2) is vague in situations where premises serve a dual purpose by arguing "the statute contemplates that one location be dedicated to the use, care, or supervision of minors and that the other location not be so dedicated such that it is lawful for a sex offender to be at the location that is not dedicated to the use, care, or supervision of minors." Yet North Carolina General Statute § 14-208.18(a)(2) directly addresses defendant's argument and plainly prohibits him from being "[w]ithin 300 feet" of any premises, no matter its purpose, if within that premises there is "any location intended primarily for the use, care, or supervision of minors[.]" N.C. Gen.Stat. § 14-208.18(a)(2). While North Carolina General Statute § 14-208(a)(1) plainly prohibits defendant from being
 
 *162
 
 within 300 feet of certain locations, like preschools, (a)(2), takes the prohibition a step further, into defendant's situation, and also prohibits defendant from being at premises, like churches, if those premises include areas primarily used for "the use, care, or supervision of minors[.]"
 
 Id.
 

 Defendant argues that North Carolina General Statute § 14-208.18(a)(2) would bar sex offenders from many types of businesses and locations. This is correct, since this subsection specifically includes "malls, shopping centers, or other property open to the general public." N.C. Gen.Stat. § 14-208.18(a). Indeed, it may be unlikely that a sex offender could drive a car through a town in North Carolina and not come within 300 feet of some sort of store, restaurant, park, hospital, or school which would be included under North Carolina General Statute § 14-208.18(a)(2), since so many of these locations have within them specific areas "primarily for the use, care, or supervision of minors[.]"
 
 Id.
 
 Other subsections of North Carolina General Statute § 14-208.18 set forth some specific exemptions which, under certain limited conditions, permit a registered sex offender to be present on premises that would otherwise be off limits, including school property to address the needs of his own child, a voting place, or a facility providing medical care.
 
 See
 

 *127
 
 N.C. Gen.Stat. § 14-208.18. But defendant's vagueness argument is more properly a challenge to the
 
 facial
 
 constitutionality of the statute and is actually an overbreadth argument, but as noted above, defendant failed to argue any violation of First Amendment rights in his original brief, and thus has no grounds for an overbreadth challenge.
 
 See
 

 Broadrick,
 

 413 U.S. at 612
 
 ,
 
 93 S.Ct. at 2916
 
 ,
 
 37 L.Ed.2d at 840
 
 . Defendant's argument here is based on vagueness, and North Carolina General Statute § 14-208.18(a)(2) may be many things, but it is not vague.
 
 [3]
 

 See
 
 N.C. Gen.Stat. § 14-208.18(a) (2). As applied to defendant, it is quite clear that North Carolina General Statute § 14-208.18(a)(2) bars sex offenders from being within 300 feet of a church which contains a preschool.
 
 See
 
 id.
 

 Defendant further stresses the dual purposes of the church premises and also argues that "[a] person of ordinary intelligence would have inferred that a sign at a church that simply read, 'Nursery,' meant there was a nursery at the church for parents to drop their children at while they worshipped in the sanctuary on SUNDAYS." But as we noted, nothing in North Carolina General Statute § 14-208.18(a)(2) states that the location "primarily for the use, care, or supervision of minors" must be
 
 in operation
 
 for defendant to be prohibited from being within 300 feet.
 
 See
 
 N.C. Gen.Stat. § 14-208.18(a)(2). In fact, North Carolina General Statute § 14-208.18(a)(2) avoids the vagueness that defendant contemplates by addressing the purpose of the location rather than if the location is open or not or whether there are actually children present at a particular time. In other words, the question is what a "person of ordinary intelligence,"
 
 Daniels,
 

 224 N.C.App. at 622
 
 , 741 S.E.2d at 364, would believe the purpose of the location to be; we believe that a reasonable person would say a preschool or nursery's
 
 [4]
 
 primary purpose is caring for children, even if the preschool happened to be closed to the public at the time. Under the statute as written, a sex offender need not wonder if the preschool is open or not, or if children are present, or if it is open but being used to host some other type of event like a staff holiday party; thus, in
 
 *128
 
 this situation, no matter the time of day or day of the week, the location was a preschool or nursery and obviously has a primary purpose of "the use, care
 
 *163
 
 or supervision of minors" so defendant violated the statute.
 
 See
 
 N.C. Gen.Stat. § 14-208.18(a)(2). The trial court therefore correctly ruled that North Carolina General Statute § 14-208.18(a)(2) is not unconstitutionally vague, and this argument is overruled.
 

 V. Conclusion
 

 For the foregoing reasons, we find no error.
 

 NO ERROR.
 

 Judges CALABRIA and TYSON concur.
 

 [1]
 

 While the transcript notes defendant's trial began on 9 July 2014, the record indicates it actually began on 9 June 2014. Further confirming the June date is the fact that the jury verdict, judgment, and defendant's notice of appeal were filed or entered in June of 2014, so the trial could not have occurred in July of 2014.
 

 [2]
 

 Of course, if one of the elements of the underlying crime is that the victim is younger than 16, proof of the conviction itself would suffice.
 

 [3]
 

 While the language in North Carolina General Statute § 14-208.18(a)(2) may raise other constitutional issues, defendant has only raised vagueness as an as-applied challenge, and thus, it is all we address.
 

 [4]
 

 While the focus of the State's case was on the preschool the church operated during the week, often in the nursery area, there was actually also a church nursery used in the more traditional fashion, to care for children on Sunday morning while their parents attend services. The terms "preschool" and "nursery" are used interchangeably in the evidence to describe the location, but there is no dispute regarding the existence of a child care facility as described throughout this opinion, regardless of the exact terminology used. Both "preschool" and "nursery" clearly denote locations which provide care and supervision for young children.