INMAN, Judge.
Defendant John Christopher Duff ("Defendant") appeals two judgments revoking his probation. Defendant has also filed a petition for writ of certiorari as a result of defects in his notice of appeal and a motion for appropriate relief ("MAR") challenging the jurisdiction of the trial court to revoke his probation in one of the two cases because he had completed his lawful period of probation prior to the filing of the violation report. After careful review, we allow Defendant's petition for writ of certiorari, deny his MAR, and affirm the revocation of his probation in both file numbers with a remand to correct clerical errors in each.
I. FACTUAL AND PROCEDURAL HISTORY
Defendant pled guilty to two counts of felony breaking and entering in file numbers 14CRS092098-99 and was sentenced on 5 March 2015. In 14CRS092098, Defendant was sentenced to 10-21 months in prison, which was suspended for intermediate punishment: a 108-day split sentence and 36 months of supervised probation. The trial court also required that Defendant obtain a mental health evaluation, make and keep appointments with the Veteran's Affairs hospital in Durham for mental health treatment, and reside with his ex-wife. In 14CRS092099, Defendant was sentenced to a 10-21 month prison term to run consecutively with 14CRS092098; this, too, was suspended for 36 months of supervised probation on the same special conditions set forth in 14CRS092099. Defendant was ordered to pay restitution in both cases.
Defendant's probation officer filed violation reports in both file numbers in July 2017. On 24 August 2017, the trial court modified Defendant's probation after finding Defendant had violated his probation as alleged by the probation officer, requiring him to stop drinking alcohol, submit to a curfew enforced by electronic monitoring for 90 days, and receive substance abuse and mental health treatment.
33 months after Defendant's probation terms began, Defendant's probation officer once again filed violation reports in each case. These violation reports alleged that Defendant had: (1) absconded within the meaning of N.C. Gen. Stat. § 15A-1343(b)(3a) (2017) ; (2) failed to report for office visits; (3) failed to pay his court debts; (4) failed to obtain mental health and substance abuse assessments; (5) possessed alcohol; and (6) committed the criminal offense of assault with a deadly weapon.
The trial court held a hearing on these reports on 23 April 2018, more than a month after Defendant's probation had expired. Although Defendant admitted through counsel to all violations, his attorney requested that the trial court extend and modify his probation, rather than revoke it, by ordering him to participate in the county's combined mental health and drug treatment court, as he continued to suffer from major depression, anxiety, and psychosis. The trial court declined Defendant's suggestion and revoked his probation by written judgments entered on 24 April 2018. In its judgments, the trial court found in Finding of Fact 4 that "[e]ach violation is, in and of itself, a sufficient basis upon which this Court should revoke probation and activate the suspended sentence" and in Finding of Fact 5 that revocation was authorized "for the willful violations of the condition(s) that he ... not commit any criminal offense ... or abscond from supervision."
Defendant did not give oral notice of appeal at the time of the hearing; however, five days later, his counsel returned to the trial court and requested that Defendant be allowed "to file Notice of Appeal" and receive appellate counsel through the Appellate Defender. No written notice of appeal was ever filed. Recognizing that Defendant's trial counsel's attempt to notice an appeal did not comply with Rule 4(a) of the North Carolina Rules of Appellate Procedure, Defendant's appellate counsel filed a petition for writ of certiorari on 21 September 2018. On 3 October 2018, Defendant filed his MAR.
II. ANALYSIS
A. Defendant's Petition and MAR
This Court may, in its discretion, hear appeals by writ of certiorari "in appropriate circumstances ... when the right to prosecute an appeal has been lost by failure to take timely action." N.C. R. App. P. 21(a)(1) (2018). " 'Appropriate circumstances' may include when a defendant's right to appeal has been lost because of a failure of his or her trial counsel to give proper notice of appeal." State v. Gordon , 228 N.C. App. 335, 337, 745 S.E.2d 361, 363 (2013). Because Defendant's appeal has some merit and his right to prosecute it was lost due to his trial counsel's failure to give proper notice of appeal, we grant Defendant's petition for writ of certiorari.
Defendant's MAR asserts that the trial court lacked jurisdiction to revoke his parole in file number 14CRS092099, a question we review de novo . State v. Hoskins , 242 N.C. App. 168, 171, 775 S.E.2d 15, 18 (2015). He contends that, per the box checked on the judgment in that file,[1] Defendant was sentenced to a community punishment of 36 months supervised probation; pursuant to N.C. Gen. Stat. § 15A-1343.2(d) (2017), the maximum period of probation that may be imposed as a community punishment on a felony conviction is 30 months unless the trial court makes specific findings that a longer term is necessary. Defendant, however, was sentenced without those findings. He contends that because the probation violation report in file number 14CRS092099 was filed 33 months into his probation-three months after the alleged lawful period of probation on his community punishment had expired-it was invalid to invoke the trial court's jurisdiction. See, e.g., State v. Harwood , 243 N.C. App. 425, 428, 777 S.E.2d 116, 119 (2015) ("[I]n order for a trial court to revoke a defendant's probation after the expiration of the period of probation, the State must have filed a written violation report before the expiration of the period of probation.").
The State does not address the merits of Defendant's MAR in its response. Rather, it argues that: (1) we should dismiss it as improperly before this Court due to Defendant's failure to properly notice his appeal; and (2) we should deny the MAR as a collateral attack on the judgment entered in 14CRS092099. We are not persuaded by these arguments.
At the time Defendant filed his MAR, a validly pending petition for writ of certiorari-which we have now allowed-was before this Court. We are therefore permitted to address the MAR pursuant to N.C. Gen. Stat. § 15A-1418. See, e.g., State v. Hadden , 175 N.C. App. 492, 497, 624 S.E.2d 417, 420 (2006) ("However, since defendant has a petition for writ of certiorari pending before this Court, we may address defendant's MAR." (citation omitted)).
We also are not compelled to deny Defendant's MAR as an impermissible collateral attack on the related judgment. In State v. Pennell , 367 N.C. 466, 758 S.E.2d 383 (2014), a defendant argued in his direct appeal that the trial court lacked jurisdiction to revoke his probation due to an alleged fatal variance in the indictment on which he was convicted. 367 N.C. at 467, 758 S.E.2d at 384. In resolving the appeal, our Supreme Court concluded:
Because a jurisdictional challenge may only be raised when an appeal is otherwise proper, we hold that a defendant may not challenge the jurisdiction over the original conviction in an appeal from the order revoking his probation and activating his sentence. The proper procedure through which defendant may challenge the facial validity of the original indictment is by filing a motion for appropriate relief .... Our holding here does not prejudice defendant from pursuing these avenues.
Id. at 471-72, 758 S.E.2d at 387 (citation omitted) (emphasis added). Following Pennell , Defendant's MAR is an appropriate means of challenging the trial court's jurisdiction in these circumstances.
Furthermore, Defendant is not challenging the trial court's jurisdiction to convict him or to sentence him for his offense. He is only challenging the trial court's jurisdiction to revoke his probation where the underlying sentence was invalid on grounds specifically reviewable by MAR. N.C. Gen. Stat. § 15A-1415(b)(8) (2017). The State's position, relying entirely on precedent[2] dealing with waivers of rights of direct appeal-as opposed to MARs-is unavailing.
Although Defendant has scored a jurisdictional victory-insofar as we will review his MAR on the merits-he is not entitled to the relief he seeks. We agree with Defendant that an error exists in the judgment at issue; we disagree, however, as to what the error is. Defendant pled guilty in 14CRS092099 to breaking and entering, a Class H felony, at prior record level III. Under the statutory sentencing guidelines applicable to Defendant's offenses, the trial court was authorized to impose either an intermediate or active sentence . N.C. Gen. Stat. § 15A-1340.17(c) (2017). The relevant definitional statute, N.C. Gen. Stat. § 15A-1340.11(6) (2017) defines an intermediate punishment as "[a] sentence in a criminal case that places an offender on supervised probation." By sentencing Defendant to 36 months of supervised probation within the statutory definition of intermediate punishment, the trial court imposed the authorized intermediate punishment rather than an unauthorized community punishment as indicated by the box checked on the face of the judgment.[3] We therefore deny Defendant's MAR but remand file number 14CRS092099 to the trial court for correction of this clerical error by entering a judgment marked as an intermediate punishment. See State v. Smith , 188 N.C. App. 842, 845, 656 S.E.2d 695, 696-97 (2008) ("When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." (internal quotation marks and citations omitted)).
B. Revocation of Probation in 14CRS092098
Defendant levies three non-jurisdictional arguments at the order revoking his probation in 14CRS092098, asserting the trial court: (1) violated its constitutional duty to hold a competency hearing sua sponte ; (2) failed to make a finding of good cause to revoke Defendant's probation after its expiration pursuant to N.C. Gen. Stat. § 15A-1344(F)(3) ; and (3) erred in finding each individual violation was sufficient to revoke his probation. We reject Defendant's first two arguments. As to the third, we agree that the trial court checked an incorrect box in making the finding at issue and remand solely for correction of that clerical error.
Defendant's first argument, sounding in constitutional due process rights, State v. McRae , 139 N.C. App. 387, 389, 533 S.E.2d 557, 559 (2000), is reviewed de novo . State v. Fryou , 244 N.C. App. 112, 125, 780 S.E.2d 152, 161 (2015). "A trial court has a constitutional duty to institute, sua sponte , a competency hearing if there is substantial evidence before the court indicating that the accused may be mentally incompetent." State v. Young , 291 N.C. 562, 568, 231 S.E.2d 577, 581 (1977) (quotation marks and citations omitted) (emphasis added). We have observed that " '[e]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant' to a bona fide doubt [of competence] inquiry." McRae , 139 N.C. App. at 390, 533 S.E.2d at 559 (quoting Drope v. Missouri , 420 U.S. 162, 180, 43 L.Ed. 2d 103, 118 (1975) ). By contrast, evidence of past treatment, absent any expressed competency concerns by the defendant or his counsel, does not amount to substantial evidence that the defendant may be mentally incompetent. State v. King , 353 N.C. 457, 466-67, 546 S.E.2d 575, 585 (2001).
The only direct evidence before the trial court concerning Defendant's competency was his past treatment and diagnosis-which occurred prior to his sentencing-for major depression, anxiety, and psychosis. Weighing against any competency concerns is the fact that Defendant communicated with the trial court when he pled guilty and at sentencing, answering each question during the colloquy without any apparent issue. At no point, either during sentencing or at the probation revocation hearing, did Defendant or his counsel raise any concern about his competency; instead, his counsel at sentencing requested probation to address his mental health issues, and his attorney at the revocation hearing sought an extension of Defendant's probation under new and additional terms through a transfer to drug treatment and mental health court. Consistent with King , we hold that the trial court did not err in declining to hold a sua sponte competency hearing simply because Defendant's medical history disclosed the presence and treatment of mental illness. Id. at 466-67, 546 S.E.2d at 585.
Defendant's second argument is likewise unavailing. The statute authorizing revocation of probation after expiration of the term, N.C. Gen. Stat. § 15A-1344, requires the revoking court to "find[ ] for good cause shown and stated that the probation should be ... revoked." N.C. Gen. Stat. § 15A-1344(f) (2017). Defendant argues that a specific finding to that effect is required beyond the finding of a violation sufficient to order revocation. However, as conceded by Defendant, this Court has held that such a specific finding is not required when valid grounds for revocation are shown at the hearing and found by the trial court in writing. State v. Morgan , --- N.C. App. ----, ----, 814 S.E.2d 843, 847-48. Though Defendant contends that Morgan conflicts with our Supreme Court's decision in State v. Bryant , 361 N.C. 100, 102-03, 637 S.E.2d 532, 535, which interpreted language no longer found in N.C. Gen. Stat. § 15A-1344(f), the Morgan majority rejected Defendant's exact argument over a dissent relying on Bryant . Morgan , --- N.C. App. at ----, 814 S.E.2d at 851-52. Until we are informed otherwise by our Supreme Court, we are bound by the majority in Morgan . In re Appeal from Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).[4] As a result, Defendant's argument is overruled.
In his final argument, Defendant points out that the trial court checked the box next to Finding of Fact 4 that each of the seven violations committed by Defendant individually justified revocation even though, by statute, only two of the violations allow for that result. See generally N.C. Gen. Stat. § 15A-1344(a) (2017) (setting forth the violations for which probation may be revoked). Such an erroneous finding merely requires remand for correction of a clerical error when the trial court also finds separately that the Defendant absconded and/or committed a criminal offense while on probation and the hearing transcript shows the trial court revoked probation on those grounds. State v. Sharpe , --- N.C. App. ----, ----, 816 S.E.2d 258, 260 (2018). Here, the trial court found separately that Defendant absconded and committed a criminal offense while on probation and expressly stated at the hearing that "I find his violation is willful and without excuse, and including absconding . And let his probation be revoked and suspended sentence activated." (emphasis added). We therefore affirm and remand the judgment revoking Defendant's probation in file number 14CRS092098 for correction of this clerical error only.
III. CONCLUSION
For the foregoing reasons, we allow Defendant's writ of certiorari and deny his MAR, affirm the trial court judgments, and remand for correction of the clerical errors identified herein.
AFFIRMED IN PART AND REMANDED FOR CORRECTION OF CLERICAL ERRORS.
Report per Rule 30(e).
Judges DILLON and COLLINS concur.

The judgments relevant to this appeal consist of two completed copies of the same form promulgated by the Administrative Office of the Courts. The form presents two boxes for punishment in the top right hand corner, one beside "COMMUNITY" and the other next to "INTERMEDIATE." In 14CRS092099, the box next to "COMMUNITY" was checked while the other was left empty; the inverse is true of the judgment in 14CRS092098.

The State cites State v. Holmes , 361 N.C. 410, 646 S.E.2d 353 (2007), State v. Noles , 12 N.C. App. 676, 184 S.E.2d 409 (1971), State v. Cordon , 21 N.C. App. 394, 204 S.E.2d 715 (1974), State v. Rush , 158 N.C. App. 738, 582 S.E.2d 37 (2003), and State v. Long , 220 N.C. App. 139, 725 S.E.2d 71 (2012), for support. Though none of these decisions addresses MARs directly, one lends support to Defendant's position. See Long , 220 N.C. App. at 142, 725 S.E.2d at 73 (holding on writ of certiorari from an order revoking probation that the defendant's jurisdictional argument challenging the trial court's original sentence was an impermissible collateral attack while citing N.C. Gen. Stat. § 15A-1415(b)(2) for the proposition that "defendant could have appealed his ... judgments ... in accordance with the procedures set forth in our statutes and appellate rules" (additional citations omitted)).

The University of North Carolina's School of Government, in reviewing the North Carolina Sentencing and Policy Advisory Commission's annual Structured Sentencing Statistical Report for Felonies and Misdemeanors for fiscal year 2017, noted that more than 3,500 judgments-or 43 percent of all community punishments-entered that year were improperly marked in the Administrative Office of the Courts' Automated Criminal Infraction System as community rather than intermediate, possibly as a result of a software error that has gone uncorrected since enactment of the Justice Reinvestment Act in 2011. Jamie Markham, 2018 Sentencing Commission Statistical Report Available , North Carolina Criminal Law (March 15, 2018, 11:08 AM), https://nccriminallaw.sog.unc.edu/2018-sentencing-commission-statistical-report-available/. This was also pointed out by the Commission itself, which was unable to determine why the error occurred:
Data provided in Table 3 indicate instances in which an Intermediate or Community punishment was imposed where it is not authorized under the Felony Punishment Chart (e.g., a Community punishment is not authorized for felony convictions in Class I with Prior Record Level III through Prior Record Level VI; an Intermediate punishment is not authorized for Class I with Prior Record Level I). These discrepancies are possibly a result of changes to Intermediate and Community punishments under the Justice Reinvestment Act. It is not clear whether these data reflect actual sentencing practices or how information is captured in the AOC's automated database.
North Carolina Sentencing and Policy Advisory Commission, Structured Sentencing Statistical Report for Fiscal Year 2017, 10, (2017), https://www.nccourts.gov/documents/publications/structuredsentencing-statistical-reports.

The Morgan majority itself relied on In re Appeal from Civil Penalty in rejecting the outcome advocated by the dissent. Morgan , --- N.C. App. at ----, 814 S.E.2d at 847.